# FILED

## NOT FOR PUBLICATION

JUL 22 2019

## UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

## FOR THE NINTH CIRCUIT



| | |
|---|---|
| CENTURY SURETY COMPANY,<br><br>        Plaintiff-Appellant,<br><br>v.<br><br>DENNIS PRINCE; GEORGE RANALLI;<br>SYLVIA ESPARZA,<br><br>        Defendants-Appellees. | Nos. 17-16645<br>        18-15945<br><br>D.C. No.<br>2:16-cv-02465-JCM-PAL<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted July 10, 2019, as to No. 17-16645
Submitted July 10, 2019, as to No. 18-15945[**]
Portland, Oregon

Before:  FERNANDEZ, GRABER, and OWENS, Circuit Judges.

Plaintiff Century Surety Company appeals the with-prejudice dismissal of its

state-law complaint against Defendants Dennis Prince, George Ranalli, and Sylvia

Esparza.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without
oral argument.  Fed. R. App. P. 34(a)(2).

1. The district court did not err by granting Prince's special motion to dismiss under Nevada Revised Statutes section 41.660, although it did apply an incorrect legal standard. Because we have de novo review over a district court's grant of a special motion to dismiss under a state's anti-SLAPP law, Makaeff v. Trump Univ., LLC, 715 F.3d 254, 261 (9th Cir. 2013), we address the merits instead of remanding for the district court to apply the correct legal standard. See Farris v. Seabrook, 677 F.3d 858, 865, 868–69 (9th Cir. 2012) (reviewing de novo where the district court failed to apply a necessary factor before granting a preliminary injunction and affirming the preliminary injunction).

Under the pre-2013 version of the anti-SLAPP statute, Defendants had the "initial burden of production and persuasion" to show that Plaintiff's lawsuit was "based on a protected communication," as defined in Nevada Revised Statutes section 41.637. Delucchi v. Songer, 396 P.3d 826, 831 (Nev. 2017) (internal quotation marks omitted). The parties agree that Prince's allegations that Michael Vasquez was in the course or scope of his employment with Blue Streak at the time of the accident fit within one of section 41.637's enumerated categories. And Defendants made their initial threshold showing that Prince's challenged communications were truthful or made without knowledge of their falsehood. Nev. Rev. Stat. § 41.637.

2

The following evidence justified Prince's allegations: (1) according to the police incident report, "Vasquez stated he had just gotten off work" before the accident; (2) Blue Streak's website advertised that its detailing service was "always available"; and (3) the license plate on Vasquez' truck read "JSTDTLD." Plaintiff argued that Prince failed to meet his initial burden because he never submitted a declaration attesting to the truth of the allegations. But, although Delucchi accepted a declaration as sufficient to meet the moving party's initial burden, Delucchi did not hold that a declaration is necessary for the moving party to meet its initial burden. 396 P.3d at 833. And, although Prince did not submit a declaration, he did sign the state-court complaint. Per Nevada Rule of Civil Procedure 11, Prince's signature certified that, "to the best of [his] knowledge, information, and belief," the complaint's "factual contentions ha[d] evidentiary support." In other words, Prince attested to the truth of the allegations, albeit not under oath. Given the supporting evidence and the signed complaint, Prince shifted the burden to Plaintiff. John v. Douglas Cty. Sch. Dist., 219 P.3d 1276, 1286–87 (Nev. 2009).

To survive Prince's special motion to dismiss, Plaintiff had to demonstrate a genuine issue of material fact "regarding whether the communications were untruthful or made with knowledge of their falsehood." Id. at 1287. Plaintiff

3

never came to grips with this burden, instead arguing that its evidence raised a genuine issue of material fact as to whether Vasquez was acting in the course or scope of Blue Streak's business at the time of the accident. But what a fact-finder might determine at trial from conflicting course-and-scope evidence is irrelevant to whether Prince's allegations were "untruthful or made with knowledge of their falsehood" when he made them. Id.

Here, Plaintiff simply "has not provided any evidence that the communications were untruthful or made with knowledge of falsehood." Id. Indeed, Plaintiff conceded that "there was some conflicting evidence to support Prince's statements." Yet Plaintiff repeatedly pointed to selected evidence that supported its position that Vasquez was running personal errands at the time of the accident. But Plaintiff cannot explain why Prince should have been required to accept as true Vasquez' affidavit that contradicted the initial incident report, or Vasquez' lay opinion that Plaintiff should not bear any financial responsibility for the accident. Knowledge of contradictory information is not the same thing as knowledge of falsehood.

2. The district court did not abuse its discretion by denying Plaintiff the opportunity to conduct discovery. Plaintiff never filed a Federal Rule of Civil Procedure 56(d) affidavit or declaration seeking further discovery. Although

4

Plaintiff raised the issue of more discovery when it opposed the discovery stay under Nevada Revised Statutes section 41.660(4), Plaintiff did so perfunctorily at best. On appeal, Plaintiff still could not state with any specificity what discovery it requires to respond to the special motion. Given the significant record here and the opportunity that Plaintiff had to conduct discovery on similar issues in the state-court proceedings, Plaintiff failed to explain—under Rule 56(d) or section 41.660(4)—what "information that is essential to its opposition" that it "has not had the opportunity to discover." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)).

Plaintiff also argued that, under Planned Parenthood Federation of America, Inc. v. Center for Medical Progress, 890 F.3d 828, 834 (9th Cir. 2018), cert. denied, 139 S. Ct. 1446 (2019), "discovery must be allowed" under Rule 56 "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim." But Planned Parenthood involved an anti-SLAPP motion under California law, not Nevada law. Id. at 830–31. California's anti-SLAPP statute, unlike the applicable version of section 41.660, requires a plaintiff responding to an anti-SLAPP motion to show "that there is a probability that the plaintiff will prevail on the claim" to avoid dismissal. Id. at 833 (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). By

5

contrast, Plaintiff here did <u>not</u> have to show a probability of prevailing on its claims to avoid dismissal. Indeed, Prince's special motion to dismiss did not challenge "the factual sufficiency" of Plaintiff's claims, but rather challenged the fact that the claims targeted good-faith communications. So, <u>Planned Parenthood</u> does not require discovery here.

3. Because Plaintiff was not entitled to conduct discovery, the district court also did not abuse its discretion in denying leave to amend the complaint. <u>See</u> <u>Yagman v. Garcetti</u>, 852 F.3d 859, 863 (9th Cir. 2017) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quoting <u>Ebner v. Fresh, Inc.</u>, 838 F.3d 958, 963 (9th Cir. 2016))). The problem with Plaintiff's complaint is not the sufficiency of the allegations, but the very nature of the allegations—that they target protected communications in an effort to suppress those communications. Thus, no matter how many additional allegations of fraud and conspiracy Plaintiff added to its complaint, Nevada's anti-SLAPP statute would still doom the complaint.

4. The district court erred by awarding $9,784.50 in attorney fees to Ranalli under Nevada Revised Statutes section 41.670(1)(a) for work done on a Rule

6

12(b)(6) motion to dismiss.[1]  Nevada law does not address whether Ranalli may recover fees in this circumstance.  Absent controlling Nevada precedent, Nevada courts look to California law for guidance in interpreting Nevada's anti-SLAPP statute when the relevant provisions are similar.  Shapiro v. Welt, 389 P.3d 262, 268 (Nev. 2017).

In Graham-Sult v. Clainos, 756 F.3d 724, 752 (9th Cir. 2014), we affirmed a fee award under California's anti-SLAPP statute that included fees for time that the defendants' lawyers spent "not exclusively in pursuit of the anti-SLAPP motion," such as hours "spent on the motion to dismiss."  But a more recent California case undermines Graham-Sult and guides us here.  See Wolfson v. Watts (In re Watts), 298 F.3d 1077, 1083 (9th Cir. 2002) ("Our interpretation in [a prior opinion] was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect." (quoting Owen ex rel. Owen v. United States, 713 F.2d 1461, 1464 (9th Cir. 1983))).  After we decided Graham-Sult, the California Court of Appeal clarified that "a fee award under the anti-SLAPP statute may not include matters unrelated to the anti-SLAPP motion, such as . . . summary judgment research," because such matters are not "incurred in connection with the

---

[1] We review de novo legal questions concerning a party's entitlement to attorney fees under state law.  PSM Holding Corp. v. Nat'l Farm Fin. Corp., 884 F.3d 812, 828 (9th Cir. 2018).

anti-SLAPP motion." 569 E. Cty. Blvd. LLC v. Backcountry Against The Dump, Inc., 212 Cal. Rptr. 3d 304, 310–11 (Ct. App. 2016) (internal quotation marks omitted). Thus, because Ranalli's Rule 12(b)(6) motion was unrelated to Prince's anti-SLAPP motion, we vacate the $9,784.50 portion of Ranalli's fee award attributable to the Rule 12(b)(6) motion.

5. The district court did not err by awarding $15,600 in attorney fees to Prince under section 41.670(1)(a) for work done by a partner at his current law firm with whom he had an attorney-client relationship.[2] Under Nevada law, an attorney representing himself and a law firm represented by one of its own attorneys may not recover attorney fees because they do not actually incur fees. Dezzani v. Kern & Assocs., Ltd., 412 P.3d 56, 63 (Nev. 2018). But Nevada law does not address the precise question here: whether an attorney represented by a current law partner may recover fees where the represented attorney's current firm is not a party to the case and the case concerns events that happened while the represented attorney worked elsewhere. We turn to California law for guidance.

In Gilbert v. Master Washer & Stamping Co., 104 Cal. Rptr. 2d 461, 467–69 (Ct. App. 2001), the defendant partner had been sued personally and his law firm

---

[2] Plaintiff did not challenge the district court's factual finding that Prince had an attorney-client relationship with his law partner, and that finding was not clearly erroneous.

was not a party to the case (Prince's situation exactly). The court affirmed an award of attorney fees to the defendant and held that the defendant "incurred" fees because he would either "experience a reduced draw from the partnership . . . to account for the amount of time his or her partners or colleagues have specifically devoted to his or her representation, or absorb a share of the reduction in other income the firm experiences because of the time spent on the case." Id. at 467. As a Nevada court would, Shapiro, 389 P.3d at 268, we follow Gilbert and affirm Prince's fee award.

**AFFIRMED IN PART and VACATED IN PART**. In case no. 18-15945, the parties shall bear their own costs on appeal.